IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT GARDNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SEPTA | : | NO. 20-6045 |

## MEMORANDUM

**Padova, J.**                                                                 **December 8, 2022**

Plaintiff Robert Gardner has brought this employment discrimination action against his employer, SEPTA.   Plaintiff asserts claims against Defendant SEPTA pursuant to the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and Title VII of the Civil Rights Act of 1968 ("Title VII").   Defendant has filed a Motion and Supplemental Motion for Summary Judgment seeking summary judgment as to all Counts of the Amended Complaint.   For the reasons that follow, we grant the Motion for Summary Judgment and the Supplemental Motion for Summary Judgment in their entirety, and we enter judgment in Defendant's favor.

## I.     BACKGROUND

The undisputed facts in the summary judgment record are as follows.   Plaintiff is a disabled veteran diagnosed with post-traumatic stress disorder.   (Pl.'s Resp. to Mot. for Summ. J., Ex. A ("Gardner Decl. I") ¶ 2.)   Defendant SEPTA hired Plaintiff as a bus operator in 2014. (Concise Statement of Stipulated Material Facts ("Stip. Facts") ¶ 2.)   Since then, Plaintiff has twice interviewed for the position of Control Center Manager-Light Rail.   (Gardner Decl. I ¶¶ 10, 17-18.)

### A.     Plaintiff's 2019 Candidacy

On December 14, 2018, Plaintiff first interviewed for the position of Control Center

Manager-Light Rail with then-hiring manager Lee Roberts.  (Id. ¶ 10.)  On January 4, 2019, SEPTA's corporate recruiter Swain Tamar informed Plaintiff that he was not selected for the position but was placed in a candidate pool whereby he was second-in-line, just behind SEPTA employee Horace Smith, for future vacancies in the role.  (Id. ¶ 11; Pl.'s Resp. to Mot. for Summ. J., Ex. E ("Scott Dep.") at 8:4-9:10; id., Ex. P-40 (email from Swain Tamar); id., Ex. P-53 (Def.'s Answers to Pl.'s Interrogs.) at 3-4.)  The candidate pool would expire on December 14, 2019. (Gardner Decl. I ¶ 11; Ex. P-40.)

In July 2019, a new vacancy arose for the position of Control Center Manager-Light Rail and Smith received the position by virtue of his ranking in the candidate pool.  (Def.'s Answers to Pl.'s Interrogs. at 3-4; Scott Dep. at 8:23-9:10.)  After Smith's placement, Plaintiff was first-in-line for future vacancies in the Control Center Manager-Light Rail position.  (Gardner Decl. I ¶ 14.)  In October 2019, Plaintiff learned from Kim Scott, a SEPTA employee, that another Control Center Manager-Light Rail position had become available, but that Plaintiff would not receive the position.  (Id. ¶ 16; see also Scott Dep. at 10:4-11:24.)  Scott told Plaintiff that Roberts planned to allow the candidate pool to expire so that he could consider other applicants for the vacant position.  (Gardner Decl. I ¶ 16; see also Scott Dep. at 10:4-11:24.)  The position remained vacant until the candidate pool expired in December 2019.  (Gardner Decl. I ¶¶ 14-15; see also Scott Dep. at 10:4-11:2.)

### B.    Plaintiff's 2020 Candidacy

In August 2020, Plaintiff again interviewed for the position of Control Center Manager-Light Rail.  (Gardner Decl. I ¶¶ 17-18.)  A three-person panel, including Roberts, interviewed, scored, and ranked Plaintiff and eight other candidates for the position.  (Id. ¶ 18; Stip. Facts ¶ 7; Pl.'s Resp. to Mot. for Summ. J., Ex. P-13 (panel rankings).)  The panel identified Micah Cross

as its top choice, followed by Denise Singleton as its second-choice candidate.   (Ex. P-13.)

Plaintiff was ranked fifth.   (Id.)

Upon completion of the interviews and rankings, SEPTA's Chief Officer of the Control Center Aleta Evans reviewed the results.   (Mot. for Summ. J., Ex. 16 ("Evans Dep.") at 13:11-20:5.)   Evans testified that she found discrepancies and inconsistencies in the panel's scoring, including incomplete scoresheets and miscalculations.   (Id. at 20:10-11; 21:6-22.)   Evans brought her findings to Swain Tamar and SEPTA's Affirmative Action Officer Carol O'Neal.   (Id. at 25:6-15.)   Evans, Tamar, and O'Neal determined that the interview results should be voided and the interview process should begin anew.   (Evans Dep. at 28:17-24; Mot. for Summ. J., Ex. 10 ("Tamar Dep.") at 64:15-23; id., Ex. 22 ("O'Neal Dep.") at 75:5-19.)   On November 16, 2020, Tamar sent an email to each candidate who had interviewed in August 2020, explaining that the August 2020 interview rankings were void and that each candidate would have the opportunity to reinterview for the position.   (Stip. Facts ¶ 8; Mot. for Summ. J., Ex. 15 (email from Swain Tamar).)   Plaintiff chose not to reinterview.   (Gardner Decl. I ¶ 32.)

**C.    Procedural History**

The Amended Complaint originally contained five Counts of disability and sex discrimination in violation of the ADA, the PHRA, and Title VII, based on claims of retaliation, failure to accommodate, and failure to promote.   On February 19, 2021, Defendant filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).   In an Order dated August 3, 2021, Judge Jan DuBois granted the motion in part and denied it in part.   The Order reduced the Amended Complaint to three Counts of disability or sex discrimination in violation of the ADA, the PHRA, and Title VII, all based on Defendant's alleged failure to promote Plaintiff to the position of

Control Center Manager-Light Rail in 2019 and 2020.[1]  Specifically, Count I asserts claims for disability discrimination under the ADA; Count II asserts claims for disability discrimination under the PHRA; and Count V asserts claims for sex discrimination under Title VII.   In its Motion and Supplemental Motion for Summary Judgment, Defendant seeks summary judgment on all Counts of the Amended Complaint.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing

---

[1]  In their summary judgment briefs, the parties dispute whether Judge DuBois's Order also limited Plaintiff's claims to those arising during the August 2020 time period.  Plaintiff argues that Judge DuBois's Order permitted him to proceed on claims relating to Defendant's hiring decisions in both 2019 and 2020 because the Order only explicitly dismissed Plaintiff's retaliation and failure to accommodate claims.   Defendant counters that the only remaining claims are those relating to the August 2020 interview process because the Memorandum accompanying Judge DuBois's Order identified Plaintiff's remaining claims as "claims for disability discrimination under the ADA and [the] PHRA and a claim for sex discrimination under Title VII, all . . . based on [D]efendant's failure to promote [Plaintiff] . . . in August 2020."  (Docket No. 13 at 12.)

After hearing oral argument on this issue on November 9, 2022, we conclude that Plaintiff's October 2019 claims remain in this action.   While we recognize that Defendant's motion to dismiss sought dismissal of Plaintiff's Amended Complaint in its entirety, the memorandum in support of Defendant's motion to dismiss presented no basis for dismissal of Plaintiff's 2019 failure to promote claims.   Accordingly, Judge DuBois did not address Plaintiff's 2019 claims in his Memorandum and we can only conclude that his Order did not dismiss them. Furthermore, in light of Defendant's confusion as to what claims remained in this case prior to its filing of the Motion for Summary Judgment and its failure to address the 2019 claims on their merits in its initial Motion, we granted Defendant leave to file a Supplemental Motion for Summary Judgment as to those claims at the conclusion of the November argument.

the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."   Fed. R. Civ. P. 56(c)(1).   Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex, 477 U.S. at 322.   In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion."   Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

**III**.   **DISCUSSION**

    **A.   Plaintiff's 2019 Claims**

Defendant moves for summary judgment on all of Plaintiff's 2019 claims, arguing that these claims are time barred because Plaintiff did not file a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") within the applicable statutes of limitations.[2] To file suit under Title VII or the ADA, a plaintiff must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred."   42 U.S.C. § 2000e-5(e)(1); see also 42 U.S.C. § 12117(a); Bartos v. MHM Corr. Servs., Inc., 454 F.

---

[2] Plaintiff represents in his Response to Defendant's Supplemental Motion for Summary Judgment that he pursues only one claim for employment discrimination in the 2019 time period, and that is a claim pursuant to the ADA.   Even so, because Plaintiff's Amended Complaint asserts claims under the ADA, the PHRA, and Title VII, we will address his 2019 claims as arising under all three statutes.

App'x 74, 77-78 (3d Cir. 2011).   To file suit under the PHRA, a plaintiff must file a charge of discrimination with the Pennsylvania Human Relations Commission (the "PHRC") "within one hundred eighty days after the alleged act of discrimination."   43 Pa. Stat. Ann. § 959(h).   The United States Supreme Court has explained that "discrete discriminatory acts," including promotion decisions, "are not actionable if time barred."   Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-114 (2002).

Here, Plaintiff dual-filed a charge of discrimination with the EEOC and the PHRC on October 7, 2020 and asserted in that charge that Defendant discriminated against him by permitting the candidate pool to expire in 2019.[3]   (Pl.'s Resp. to Mot. for Summ. J., Ex. P-48.)   In that administrative charge, however, Plaintiff could only pursue a timely claim of discrimination with respect to discrete acts that had occurred on or after December 12, 2019—300 days before Plaintiff filed his charge of discrimination.   Plaintiff's claims regarding the expiration of the 2019 candidate pool arose in October 2019, when Roberts decided to allow the candidate pool to expire without promoting Plaintiff.[4]   (See Gardner Decl. I ¶ 16; Scott Dep. at 10:4-11:24.)   Thus,

---

[3] It appears that Plaintiff also dual-filed a charge of discrimination with the EEOC and the PHRC on January 21, 2020.   (Am. Compl. ¶ 4.)   That administrative charge, however, is not in the summary judgment record and Plaintiff does not argue that he included his 2019 claims in that charge of discrimination.   Rather, Plaintiff maintains only that he asserted his 2019 claims in his October 7, 2020 administrative charge.

[4] Plaintiff asserts that his claim arose not in October 2019, when Roberts decided not to promote Plaintiff from the candidate pool, but in December 2019, when the candidate pool expired. The Supreme Court has made clear, however, "that a failure to promote is a 'discrete act' and that '[e]ach incident of discrimination and each . . . adverse employment decision constitutes a separate actionable unlawful employment practice' for which the time limitations on filing individually applies."   Hanani v. New Jersey Dep't of Env't Prot., 205 F. App'x 71, 78 (3d Cir. 2006) (first alteration in original) (quoting Morgan, 536 U.S. at 114 (internal quotation omitted)).   Thus, Roberts's decision to allow the candidate pool to expire without promoting Plaintiff was a discrete act which became individually actionable when it occurred in October 2019.   The possibility that Roberts may have reversed his decision and promoted Plaintiff from the candidate pool until December 14, 2019 does not change when the cause of action initially accrued.   (Gardner Decl. I

Plaintiff's discrimination claims arising from the October 2019 time period are barred as a matter of law.

Nonetheless, Plaintiff asserts that we should preserve his 2019 claims because he did not discover Roberts's decision to allow the candidate pool to expire until October 6, 2020.  (Pl.'s Resp. to Supp. Mot. for Summ. J., Ex. T (Gardner Decl. II) ¶ 3.)  This argument fails for three reasons.  First and foremost, Plaintiff's assertion that he did not learn of Roberts's decision until October 2020, which he set forth for the first time in a declaration dated November 19, 2022, directly contradicts the first declaration that he submitted to the Court nearly eight months prior. In that first declaration, Plaintiff stated that he learned of Roberts's decision "from Kim Scott in *October 2019*" when she told him "that Mr. Roberts intentionally wanted the pool to expire before he started the process of hiring for the vacancy."  (Gardner Decl. I ¶ 16 (emphasis added); <u>see also</u> Scott Dep. at 10:4-11:24.)  Now, in response to Defendant's argument that Plaintiff's 2019 claims are time barred, Plaintiff has changed his timeline without any explanation.

In circumstances similar to these, the United States Court of Appeals for the Third Circuit applies the sham affidavit doctrine.  The sham affidavit doctrine provides that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without [either] demonstrating a plausible explanation for the conflict" or pointing to "independent evidence in the record to bolster [the] otherwise questionable

---

¶ 11; Ex. P-40); <u>see</u> <u>Datto v. Harrison</u>, 664 F. Supp. 2d 472, 485 (E.D. Pa. 2009) (noting that the statute of limitations for an ADA claim begins to run when the adverse employment decision is made and "the possibility that it could have been reversed [does] not change when the cause of action accrued"); <u>see also</u> <u>Lebofsky v. City of Philadelphia</u>, Civ. A. No. 06-5106, 2009 WL 1507581, at *7 n. 18 (E.D. Pa. May 29, 2009) (explaining that an employment discrimination claim accrues when the employment decision is made and not when the employee perceives the effects of that decision), <u>aff'd</u>, 394 F. App'x 935 (3d Cir. 2010).

affidavit."[5]  Baer v. Chase, 392 F.3d 609, 624-25 (3d Cir. 2004) (citations omitted).   Here,

Plaintiff has filed two inconsistent declarations, and he does not even attempt to explain the

discrepancy between the two or identify any record evidence to support his subsequent statement,

opting instead to ignore the conflict and assert incorrectly that no record evidence supports a

conclusion that he knew in October 2019 that he was not being promoted from the candidate pool.[6]

In light of these failures, we regard Plaintiff's later-filed declaration as a sham declaration "that

indicates only that [Plaintiff] cannot maintain a consistent story or is willing to offer a statement

solely for the purpose of defeating summary judgment."   Jiminez v. All Am. Rathskeller, Inc.,

503 F.3d 247, 253 (3d Cir. 2007).   The November 19, 2022 declaration is therefore insufficient

to create a genuine issue of fact for purposes of summary judgment, and we find that the record

only supports the conclusion that Plaintiff learned of Roberts's employment decision in October

---

[5] Generally, courts apply the sham affidavit doctrine to affidavits that contradict prior deposition testimony.  Based on Third Circuit precedent, however, we cannot conclude that the doctrine is limited to that specific conflict.  See Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 547 (3d Cir. 2012) (applying the sham affidavit doctrine to two conflicting declarations); Killingsworth v. Potter, 307 F. App'x 685, 688 (3d Cir. 2009) (applying the sham affidavit doctrine when a declaration conflicted with both a prior declaration and prior deposition testimony); see also Daubert v. NRA Grp., LLC, 861 F.3d 382, 392 (3d Cir. 2017) ("The court may . . . . disregard an affidavit 'entirely unsupported by the record and directly contrary to [other relevant] testimony.'" (quoting Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007))); Ellison v. BHBC Nw. Psychiatric Hosp., Civ. A. No. 11-5106, 2013 WL 1482199, at *2 n.3 (E.D. Pa. Apr. 9, 2013) (applying the sham affidavit doctrine to an affidavit that contradicted the declarant's prior written statement because the affidavit fit "the general mold of a sham affidavit").

[6] Both Plaintiff's prior declaration and Scott's prior deposition testimony show that Scott informed Plaintiff of Roberts's decision not to promote Plaintiff from the pool in October 2019. (See Gardner Decl. I ¶ 16; Scott Dep. at 10:4-11:24.)  We emphasize that *no* record evidence supports Plaintiff's contrary assertion in his subsequent declaration that he did not learn of Roberts's decision until October 2020.   That subsequent statement is also inherently incredible as it asks the factfinder to believe that Plaintiff did not learn that he would not be promoted from the expired pool until two months after his August 2020 interview for the same vacant position to which he would have been promoted from the pool, and 10 months after the pool expired.   (See Gardner Decl. I ¶¶ 11, 17-18; Ex. P-40.)

2019.  (See Gardner Decl. I ¶ 16 (emphasis added); Scott Dep. at 10:4-11:24.)

In addition, even if we were to accept Plaintiff's assertion in his November 19, 2022 declaration that he did not discover Roberts's decision until October 2020, that assertion would not save his claim from being time-barred.   Plaintiff appears to believe that the applicable statutes of limitations provide for a discovery rule, which delays the start of the limitations period until the aggrieved party discovers his claim.   See Rotkiske v. Klemm, 890 F.3d 422, 425 (3d Cir. 2018), aff'd, 140 S. Ct. 355 (2019).   The Third Circuit has explained, however, that no implied discovery rule exists where the applicable statute of limitations explicitly states that the limitations period begins to run when the alleged unlawful act "occurs."   Id.   In its drafting of Title VII and the ADA, Congress specified that the limitations period runs from the date on which "the alleged unlawful employment practice *occurred*." 42 U.S.C. § 2000e-5(e)(1) (emphasis added); see also 42 U.S.C. § 12117(a) (providing that Title VII's procedures apply to claims arising under the ADA).   This language "implicitly excludes a discovery rule" for the ADA and Title VII statutes of limitations.   Rotkiske, 890 F.3d at 826; see also Goodman v. Norristown Area Sch. Dist., Civ. A. No. 20-1682, 2020 WL 5292051, at *3 (E.D. Pa. Sept. 4, 2020) (refusing to apply the discovery rule to the PHRA statute of limitations).   Accordingly, contrary to Plaintiff's apparent understanding of the relevant statutes, the discovery rule is inapplicable to his claims and any failure to discover Defendant's alleged unlawful employment action until a year after it occurred would not render his claims timely.

Finally, to the extent Plaintiff may be arguing that we should equitably toll the applicable limitations period, we find no basis for doing so.   "In certain instances, the doctrine of equitable tolling may stop the statute of limitations from running when a party fails to file an employment discrimination claim with the EEOC within the applicable statutory window."   Azadpour v.

9

AMCS Grp. Inc., Civ. A. No. 19-1968, 2022 WL 4110524, at *4 (E.D. Pa. Sept. 8, 2022) (citations omitted).   Generally, equitable tolling is appropriate only where (1) "the defendant has actively misled the plaintiff respecting the plaintiff's cause of action;" (2) "the plaintiff in some extraordinary way has been prevented from asserting . . . [his] rights;" or (3) "the plaintiff has timely asserted . . . [his] rights mistakenly in the wrong forum."   D.J.S.-W. by Stewart v. United States, 962 F.3d 745, 750 (3d Cir. 2020) (ellipses in original) (internal quotations omitted).   Here, Plaintiff has failed to allege that any of these three scenarios exist.   Plaintiff alleges only that he failed to discover his 2019 claims until October 2020, nearly one year after the candidate pool expired.   We therefore conclude that equitable tolling, "an extreme remedy that we extend 'only sparingly,'" is inappropriate in this case.   Id. at 752 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

For all three of the foregoing reasons, we conclude that all of Plaintiff's claims of disability and sex discrimination arising from Defendant's October 2019 employment decision are time barred.   Accordingly, Defendant's Supplemental Motion for Summary Judgment as to those claims is granted.

**B.     Plaintiff's 2020 Claims**

In Plaintiff's 2020 claims, Plaintiff asserts that he was denied a promotion based on his disability and/or his sex when he interviewed for the position of Control Center Manager-Light Rail and Defendant voided the interview results.   Defendant moves for summary judgment on these claims, arguing that Plaintiff has not demonstrated that he was subject to an adverse employment action in August 2020, as is required to establish a claim under the ADA, the PHRA, or Title VII.   Specifically, Defendant argues that Plaintiff was not denied a promotion in 2020 because (1) Defendant voided its interview results for *all* candidates and decided to begin anew

with the interview process and (2) the voided interview results did not identify Plaintiff as the top candidate for the position.  Plaintiff counters that he need not establish that he was subject to an adverse employment action because he has presented direct evidence of discrimination, and in the alternative, Plaintiff maintains that he has proven an adverse employment action because he has shown that he was denied a promotion.

As a preliminary matter, Plaintiff's argument that he need not establish that he suffered an adverse employment action is meritless.  The standards for proving discrimination under Title VII, the ADA, and the PHRA are identical.  See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) ("The proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." (internal quotation omitted)); Bialko v. Quaker Oats Co., 434 F. App'x 139, 142 n.5 (3d Cir. 2011) ("The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds." (citation omitted)).  In order to establish a claim of discrimination in violation of the ADA, the PHRA, or Title VII, a plaintiff must present either circumstantial or direct evidence of discrimination.  Pursuant to the direct evidence framework, a plaintiff must show that an unlawful, discriminatory "motive was a 'substantial motivating factor' in [an] adverse employment action."  Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187-88 (3d Cir. 2003) (quoting 188 Watson v. Southeastern Pennsylvania Transp. Auth., 207 F.3d 207, 215 (3d Cir. 2000)).  Pursuant to the circumstantial evidence framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff must show that "(1) [he] belongs to a protected class; (2) [he] was qualified for [his] position; (3) [he] was subject to an adverse employment action despite being qualified; and (4) the adverse employment action occurred under

11

circumstances raising an inference of discrimination." Lugo v. Walmart, Inc., Civ. A. No. 20-5832, 2022 WL 2905174, at *4 (E.D. Pa. July 22, 2022) (citing Betts v. Summit Oaks Hosp., 687 F. App'x 206, 207 (3d Cir. 2017)) (additional citation omitted).  Thus, regardless of whether Plaintiff is proceeding on direct evidence of discrimination or under the McDonnell Douglas framework, he must demonstrate that he suffered an adverse employment action to survive summary judgment.  See Beird v. Lincoln Univ. of Commonwealth Sys. of Higher Educ., 487 F. Supp. 3d 270, 279 n.3 (E.D. Pa. 2020) (explaining that the direct evidence and McDonnell Douglas frameworks differ only "in the degree of causation that must be shown" between the employer's alleged discriminatory intent and the employer's adverse decision).

While primarily arguing that he need not establish an adverse employment action, Plaintiff also argues in the alternative that he suffered an adverse employment action in August 2020 when Defendant failed to promote him to Control Center Manager-Light Rail by voiding its August 2020 interview results.  In Storey v. Burns International Security Services, 390 F.3d 760 (3d Cir. 2004), the Third Circuit "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  Id. at 764 (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).  The Storey definition applies in cases brought under Title VII, the ADA, and the PHRA.  Cunningham v. Nordisk, 615 F. App'x 97, 100 (3d Cir. 2015) (applying Storey definition to ADA claims (quoting Storey, 390 F.3d at 764)); Minarsky v. Susquehanna Cnty., 895 F.3d 303, 310 n.5 (3d Cir. 2018) (applying the Storey definition to PHRA claims (quoting Storey, 390 F.3d at 764)).

The Supreme Court has recognized that an employer's failure to promote an employee can constitute an adverse employment action.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761

(1998).   However, district courts within the Third Circuit have determined that no adverse action

occurs where an employer chooses not to promote *anyone* to a vacant position.   See, e.g., Stoppi

v. Wal-Mart Transp., LLC, Civ. A. No. 09-916, 2010 WL 3398990, at *9 (M.D. Pa. Aug. 26, 2010)

("Defendant did not promote anyone, and thus did not make an adverse employment decision.");

Nicholson v. Brennan, Civ. A. No. 17-7144, 2020 WL 7398663, at *5 (D.N.J. Dec. 17, 2020)

(finding no adverse employment action where the employer did not promote anyone to a vacant

position until at least one year after plaintiff claimed he was denied a promotion).

        Here, Defendant contends that the record is clear that Plaintiff did not suffer an adverse

employment action when Defendant voided the August 2020 interview results for all candidates

and decided to begin anew with the interview process.   Applying Storey to the facts in this case,

we agree that Plaintiff did not suffer an adverse employment action at that time.   The undisputed

record evidence shows that Defendant's August 2020 decision did not alter Plaintiff's employment

status in any way.   See Storey, 390 F.3d at 764.   The decision merely nullified the August 2020

interview results, maintained Plaintiff's status quo, and afforded him the opportunity to reinterview

for the position he desired.   Unlike an "adverse" action, the decision actually benefited Plaintiff

because it allowed him the opportunity to improve upon his August 2020 interview performance,

which resulted in a fifth-place ranking for the vacant position of Control Center Manager-Light

Rail, and potentially achieve a higher ranking before a new interview panel.   (See Ex. P-13; Stip.

Facts ¶ 8; Ex. 15.)   Additionally, to the extent Plaintiff may argue that his original fifth-place

ranking was motivated by discriminatory animus, that ranking did not give rise to an adverse

employment action because it was voided along with every other ranking by the August 2020

interview panel and had no effect on any promotion decision.   Moreover, the record evidence is

undisputed that no one was promoted to the vacant Control Center Manager-Light Rail position in

August 2020.  See Stoppi, 2010 WL 3398990, at *9.  Under these circumstances, the record evidence simply does not support a conclusion that Plaintiff was denied a promotion or otherwise suffered an adverse employment action when Defendant voided the August 2020 interview results.

For all of these reasons, we conclude that Plaintiff has failed to submit evidence to support a reasonable conclusion that he was subject to an adverse employment action in August 2020, as required for all of his claims arising in that time period.   Consequently, Defendant's Motion for Summary Judgment as to those claims is granted.

**IV.      CONCLUSION**

For the foregoing reasons, we grant Defendant's Motion for Summary Judgment and Supplemental Motion for Summary Judgment in their entirety, and we enter judgment in Defendant's favor on all of Plaintiff's remaining claims.   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.